FREEMAN et al., Appellees,

v.

CROWN CITY MINING, INC., Appellant.

[Cite as *Freeman v. Crown City Mining, Inc.* (1993), 90 Ohio App.3d 546.]

Court of Appeals of Ohio,
Gallia County.

No. 92CA41.

Decided Sept. 29, 1993.

548

*Sowash, Carson & Shostak* and *Robert J. Shostak,* for appellees.

*Fosson, Mann & Preston* and *James L. Mann,* for appellant.

---

HARSHA, Presiding Judge.

Crown City Mining, Inc. appeals from a judgment entered by the Gallia County Court of Common Pleas awarding Charles and Maudie Freeman $60,252.14 in attorney and expert fees in connection with the determination that Crown City Mining, Inc. had violated Ohio mining and water pollution laws.

Appellant assigns the following errors:

"I. The trial court abused its discretion and erred to the prejudice of the defendant-appellant by failing to limit attorney fees to those billable hours which were reasonably expended on the litigation.

"II. The trial court abused its discretion and erred to the prejudice of the defendant-appellant by calculating attorney fees at an hourly rate which was excessive for the prevailing market rates in the relevant community.

"III. The trial court abused its discretion and erred to the prejudice of the defendant-appellant in awarding excessive amounts of attorney fees which were not calculated in accordance with applicable law.

"IV. The trial court abused its discretion and erred to the prejudice of the defendant-appellant by awarding an enhancement of the attorney fees claimed in the amount of $16,765.00.

"V. The trial court abused its discretion and erred to the prejudice of the defendant-appellant by awarding expert fees which were not related to the matter in litigation.

"VI. The trial court abused its discretion and erred to the prejudice of the defendant-appellant by awarding expert fees which included the time for experts to remain at trial after they had testified to act as consultants to the plaintiffs' counsel."

The Freemans ("appellees") filed a complaint against Crown City Mining, Inc. ("appellant"), which alleged that appellant's strip mining operation caused a spring located on the Freemans' property to become contaminated with various pollutants. Appellees' amended complaint set forth claims for relief based upon intentional trespass, nuisance, nuisance *per se,* negligence, negligence *per se,* and violations of the Ohio Coal Strip Mine Land Reclamation Act (R.C. Chapter 1513). They sought damages and injunctive relief, as well as attorney and expert witness fees pursuant to R.C. 1513.15(H). Appellant filed an answer denying the allegations in the complaint.

Appellees filed a motion for partial summary judgment, asserting that the factual issue of whether appellant's activities had caused the contamination of their spring had been previously resolved in appellees' favor by the Ohio Reclamation Board of Review. The trial court agreed and granted appellees' motion, holding that appellant was collaterally estopped from relitigating the causation issue. However, the trial court also granted appellant's cross-motion for partial summary judgment concerning any statutory violations asserted by appellees which the Reclamation Board of Review had already determined did not occur. As a result of the latter ruling, appellees dismissed one of their statutory violation claims.

After a trial on the remaining issues, the jury determined that appellees were entitled to $75,000 in compensatory damages. The jury, in its answers to interrogatories, determined that (1) appellant violated Ohio's mining and water pollution laws; (2) as a result of appellant's violation of Ohio law, appellees incurred damages; and (3) appellant had failed to properly reclaim appellees' spring. On September 2, 1992, the trial court entered a judgment on the jury verdict in favor of appellees in the amount of $75,000.

Shortly thereafter, appellees filed a petition for an award of attorney and expert witness fees pursuant to R.C. 1513.15(H). The petition requested $33,-530.50 in attorney fees, $16,765 for a "public interest or risk enhancement multiplier," $1,182.53 for expenses, and $6,738.11 for expert fees. Attached to the petition was a detailed billing worksheet of the time spent by the attorneys and paralegals on different tasks involved in the action. Also attached were invoices of four experts. Affidavits and attached resumes of appellees' counsel, Robert J. Shostak and Jeffrey A. Kodish, indicated that the number of hours spent representing appellees and the other costs and expenses were "reasonable considering the complexity of the case." The affidavits and itemized statement indicated that Shostak's rate for environmental litigation was $150 to $175 per hour during the proceedings below and that Kodish's rate was $60 to $75 per hour.[1] Shostak and Kodish's affidavits noted that these rates were comparable to, or less than, the amount charged by environmental lawyers throughout Ohio with similar experience.

The fee petition included affidavits of three other attorneys, one of them noting that his hourly rate was $170 per hour and that such rate was equal to or less than the amount charged by lawyers with similar experience employed at firms which represent parties in coal mine litigation in Ohio. Another attorney, Stephen P. Samuels, opined that a reasonable range of hourly rates for attorneys

---

1. Kodish's affidavit erroneously listed his hourly rate as $150 to $175 per hour. However, the itemized statement and appellees' petition utilized his actual $60 to $75 per-hour rate.

with comparable experience to Shostak who concentrate their practice in environmental litigation in medium to large law firms in Ohio would be $210 to $240 per hour. Appellees later filed an amendment to their petition which requested an additional $1,511 for expert expenses.

Appellant filed a memorandum in opposition to the fee petition which asserted that (1) the hourly rate utilized by Shostak was grossly in excess of the hourly rate for skilled trial counsel in the relevant community; (2) over $6,500 of the billing by Shostak and Kodish was duplicative; (3) the attorney fees should be reduced because appellees only succeeded on a portion of their claims; (4) one expert should not be reimbursed because his billing was not related to appellees' case; (5) one expert expended a portion of his time on a well complaint that was not related to the case; and (6) the two experts who testified at trial should not have charged for time spent at trial in which they did not testify. Attached to appellant's memorandum was the affidavit of its attorney, James L. Mann, who stated that the usual and customary hourly rates for experienced trial litigators in the area ranged from $75 to $100 per hour. In another affidavit, attorney Steven T. Sloan of Athens, Ohio stated that the customary rates for Gallia County were $75 to $125 per hour. Appellees subsequently filed a reply to appellant's memorandum.

On November 5, 1992, the trial court awarded appellees $60,252.14 in attorney and expert fees which consisted of:

| | |
|---|---|
| Attorney Fees | $33,530.50 |
| Enhancement (1.5 multiplier) | 16,765.00 |
| Expenses | 1,182.53 |
| Expert Fees | 8,249.11 |
| Fee Petition Work | 525.00 |
| TOTAL | $60,252.14 |

The trial court expressly determined that Shostak's hourly rate of $175 was reasonable and that enhancement by a multiplier was warranted because "the case was severely hampered by the prior binding factual rulings of the Reclamation Board of Review," the "unclear state of the law," and appellees' "noteworthy" success. An entry *nunc pro tunc* was subsequently filed by the trial court which journalized the court's overruling of appellees' pending motion for prejudgment interest.

Appellant's first, second, and third assignments of error assert that the trial court abused its discretion by (1) failing to limit attorney fees to those billable hours which were reasonably expended on the litigation; (2) calculating attorney fees at an hourly rate which was excessive for the prevailing market rates in the relevant community; and (3) awarding excessive amounts of attorney fees which were not calculated in accordance with applicable law. We will consider these assignments of error jointly.

■ " 'As a general rule, the costs and expenses of litigation, other than the usual court costs, are not recoverable in actions for damages, and ordinarily no attorney fees are allowed.' " *Vinci v. Ceraolo* (1992), 79 Ohio App.3d 640, 649, 607 N.E.2d 1079, 1084, quoting *Gustafson v. Cotco Ent., Inc.* (1974), 42 Ohio App.2d 45, 52, 71 O.O.2d 264, 269, 328 N.E.2d 409, 414. Under this "American rule," attorney fees are generally not recoverable by the prevailing party in the absence of statutory authorization. *State ex rel. Butterbaugh v. Ross Cty. Bd. of Commrs.* (1992), 79 Ohio App.3d 826, 837, 608 N.E.2d 778, 785; *Washington Cty. Agricultural & Mechanical Assn. v. T.H.E. Insurance Co.* (Dec. 22, 1992), Washington App. Nos. 92CA4 and 92CA13, unreported, at 23, 1992 WL 388549; *Vinci, supra.* Here, the trial court awarded appellees attorney fees pursuant to R.C. 1513.15(H), which provides:

"Any person who is injured in his person or property through the violation by any operator of any rule, requirement, order or permit issued pursuant to Chapter 1513. of the Revised Code may bring an action for damages, including reasonable attorney and expert witness fees, in the court of common pleas of Franklin county or in the court of common pleas of the county in which the coal mining operation complained of is located. * * * "

■ Normally, where attorney fees are authorized by statute, the entitlement to and the amount of an award lies within the sound discretion of the trial court. *Meacham v. Miller* (1992), 79 Ohio App.3d 35, 42, 606 N.E.2d 996, 1000; *Yarber v. Cooper* (1988), 61 Ohio App.3d 609, 613, 573 N.E.2d 713, 715; see, also, *Smith v. Padgett* (1987), 32 Ohio St.3d 344, 513 N.E.2d 737. The determination by a trial court of the appropriate amount of an attorney fee award will not be reversed on appeal unless it is an abuse of discretion. *Lacare v. Dearing* (1991), 73 Ohio App.3d 238, 241, 596 N.E.2d 1097, 1099; *Meacham, supra.* "An abuse of discretion involves more than an error of * * * judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable or arbitrary." *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 506, 589 N.E.2d 24, 30; *Wilmington Steel Products, Inc. v. Cleve. Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622, 624. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181, 1183–1185, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308.

■ The parties and the trial court applied the following analysis in computing a reasonable attorney fee:

"The first step in the analysis necessitates the calculation of the 'lodestar' figure. *Akron Center for Reproductive Health v. Akron* (N.D.Ohio 1985), 604

F.Supp. 1275, 1284. * * * The lodestar is determined by multiplying the reasonable hours expended on the litigation by the reasonable hourly rate for attorneys or paraprofessionals. *Hensley* [*v. Eckerhart* (1983) ], 461 U.S. [424] at 433, 103 S.Ct. [1933] at 1939, 76 L.Ed.2d [40] at 50; *Blum v. Stenson* (1984), 465 U.S. 886, 888, 104 S.Ct. 1541, 1543, 79 L.Ed.2d 891, 895. However, in calculating the lodestar the court should exclude any hours which were unreasonably expended. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939, 76 L.Ed.2d at 50. Unreasonably expended hours are generally categorized as those which are excessive in relationship to the work done, are duplicative or redundant, or are simply unnecessary. *Id.* Further, the hours expended must be documented and that documentation must reflect billing practices employed in the private sector. *Id.* In other words, a prevailing party cannot, under Section 1988, include hours or items as chargeable to his adversary which would not be billable to a private client. Finally, the reasonableness of the fee charged is determined by comparison to prevailing market rates in the relevant community. *Blum, supra,* 465 U.S. at 895, 104 S.Ct. at 1547, 79 L.Ed.2d at 899. After calculating the lodestar, the court may, in consideration of other factors, enhance or reduce the lodestar. *Blum, supra,* at 898–899, 104 S.Ct. at 1548, 79 L.Ed.2d at 901–902." *Gibney v. Toledo Bd. of Edn.* (1991), 73 Ohio App.3d 99, 108–109, 596 N.E.2d 591, 597.

Ohio courts that have applied the "lodestar" analysis have invariably done so only where the prevailing party brought a federal constitutional claim, normally in a civil rights context, and prevailed on either that claim or a state law claim which shared a common nucleus of operative fact with the federal claim. *Cincinnati ex rel. Kuntz v. Cincinnati* (1992), 79 Ohio App.3d 86, 94–96, 606 N.E.2d 1028, 1033–1035; *Fenton v. Query* (1992), 78 Ohio App.3d 731, 737–739, 605 N.E.2d 1303, 1307–1309; *Doe v. Cuddy* (1985), 21 Ohio App.3d 270, 21 OBR 341, 487 N.E.2d 914; *Gibney, supra.* Appellees did not assert any federal claim, constitutional or otherwise, in this action. Instead, appellees' claims were based solely on state law. However, since the parties were in agreement, we see no reason to question its applicability here.[2]

---

**2.** In *Bittner v. Tri–County Toyota, Inc.* (1991), 58 Ohio St.3d 143, 569 N.E.2d 464, the Supreme Court of Ohio held at the syllabus that "[w]hen awarding reasonable attorney fees pursuant to R.C. 1345.09(F)(2) [of the Consumer Sales Practices Act], the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR 2–106(B)." DR 2–106(B) specifies the following factors as guides in determining the reasonableness of an attorney fee:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

"(3) The fee customarily charged in the locality for similar legal services.

■ Appellant initially contends that the hours billed by Shostak and Kodish were not reasonable because many of their charges were duplicative, *i.e.*, both attorneys billed for consultations they had with each other pertaining to the case. "[C]ourts have frequently pointed out that time spent in doing the work is not a controlling factor in assessing the value of the services. * * * The time must be fairly and properly used." (Footnote omitted.) 1 Speiser, Attorneys' Fees (1973) 305, 308, Section 8.6. A lawyer basing his fee on the hours expended may not employ wasteful procedures in an effort to increase the number of billable hours. Rotunda, Professional Responsibility (2 Ed.1988) 89, T IV(A)(1). Unnecessary and duplicative efforts by counsel should not be utilized in calculating reasonable hours. See, *e.g., Zimmie v. Zimmie* (Feb. 3, 1983), Cuyahoga App. Nos. 43299, 44803, and 44804, unreported, 1983 WL 5747.

■ As noted by appellant, the federal appellate court in *Copeland v. Marshall* (C.A.D.C.1980), 641 F.2d 880, 891, stated:

"Compiling raw totals of hours spent, however, does not complete the inquiry. It does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended. In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority. Thus, no compensation is due for nonproductive time. For example, where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time. * * *" (Emphasis *sic.*) See, also, *Citizens Organized Against Longwalling v. Div. of Reclamation* (Jan. 31, 1989), Meigs App. No. 416, unreported, 1989 WL 11818 (Stephenson, J., dissenting).

---

"(4) The amount involved and the results obtained.
"(5) The time limitations imposed by the client or by the circumstances.
"(6) The nature and length of the professional relationship with the client.
"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
"(8) Whether the fee is fixed or contingent."
Ohio courts have consistently utilized these factors in determining the reasonableness issue. *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 41, 543 N.E.2d 464, 469; *Hockenberry v. Hockenberry* (1992), 75 Ohio App.3d 806, 810, 600 N.E.2d 839, 841. Attorney fee awards must be reasonable in light of the pertinent Disciplinary Rule provisions. *Meacham, supra,* 79 Ohio App.3d at 42, 606 N.E.2d at 1000. The determination of an award must be predicated upon evidence adduced by the parties. *Yarber, supra,* 61 Ohio App.3d at 614, 573 N.E.2d at 716. *Bittner* has since been applied by Ohio courts in cases involving judicial computation of reasonable attorney fees, even where the case does not involve the Consumer Sales Practices Act. *Gerhardt v. Mid Am. Mtge. Corp.* (Mar. 5, 1993), Pickaway App. No. 92CA14, unreported, 1993 WL 63396; *Suiter v. Walker* (July 21, 1992), Lawrence App. No. 91CA13, unreported, 1992 WL 174702; *Day v. Day* (May 14, 1991), Franklin App. No. 90AP–745, unreported, 1991 WL 81954.

However, as appellees assert, prevailing parties are not necessarily barred from fees for the presence of a second attorney or hours spent by collaborating attorneys. See, *e.g., New York State Assn. for Retarded Children v. Carey* (C.A.2, 1983), 711 F.2d 1136, 1146. We agree with appellees that the trial court could have reasonably concluded that the conferences between Shostak and Kodish actually lowered the amount of attorney fees because it increased Kodish's involvement and lessened Shostak's time on the case, with Shostak's hourly rate being $100 greater than Kodish's. It could additionally conclude that the billing was reasonable and not duplicative. Therefore, the trial court did not abuse its discretion in failing to strike the challenged hours as duplicative.[3]

Appellant next contends that Shostak's rates of $150 per hour until January 1, 1992 and $175 per hour thereafter were excessive for the prevailing market rates in the relevant community. The fee customarily charged in the locality for similar services is a pertinent factor in determining the reasonableness of the fee. See by analogy DR 2–106(B)(3); Rotunda, *supra*, at 89, T IV(A)(1). However, custom and prevailing rates are by no means conclusive, and may be disregarded where the litigation is highly specialized. Speiser, *supra*, at 326–327, Section 8.13. Furthermore, "[t]he attorney's standing in the profession for learning, ability, skill, and integrity is recognized as a proper matter for consideration in assessing the value of his services." (Footnote omitted.) *Id.* at 311, Section 8.8; see, also, DR 2–106(B)(7). The materials filed by appellees in support of their fee petition indicated that Shostak specialized in environmental litigation and possessed recognized skill and expertise in that area. Affidavits of attorneys with similar experience indicated that his hourly rates were reasonable. The trial court could properly have accorded more weight to the affidavits filed by appellees than those filed by appellant. The trial court did not abuse its discretion in determining that Shostak's hourly rates were reasonable, *i.e.*, that they were comparable to fees customarily charged by attorneys with similar experience in the pertinent community.

Appellant further contends that the amount awarded for attorney fees was excessive where appellees only succeeded on a portion of their claims. The results obtained are pertinent considerations in determining the reasonableness of the fee. See DR 2–106(B)(4); *Fenton v. Query* (1992), 78 Ohio App.3d 731, 739, 605 N.E.2d 1303, 1308. However, "[t]he final result in a case is not always the test of an attorney's right to payment for his services." (Footnote omitted.) Speiser, *supra*, at 323, Section 8.11. It is somewhat disconcerting that

---

**3.** An evidentiary hearing might have further clarified the attorney fees computation but appellant neither requested one below nor asserts any error because of the failure of the trial court to hold one on appeal.

appellees failed to specifically address this contention of appellant either below or on appeal. However, we are persuaded that a review of all the relevant circumstances before the trial court supports its approval of appellees' requested fees prior to enhancement. Certainly, appellant is correct in its assertion that appellees only recovered a portion of damages sought and failed to recover on many of their claims. However, there is no record indicating that the unsuccessful claims necessitated additional billable time beyond that needed for those upon which appellees succeeded. More important, the trial court could have appropriately considered the other pertinent factors, *i.e.*, difficulty of litigation, to offset any perceived noncompensable hours spent on the nonmeritorious claims. The consideration of "results obtained" is not synonymous with the monetary amount of the recovery; it encompasses the degree of success enjoyed by the prevailing party. *Bittner, supra*, 58 Ohio St.3d at 145, 569 N.E.2d at 466; *Cyrus v. Journey* (Mar. 11, 1992), Scioto App. No. 91CA1988, unreported, 1992 WL 50017. Appellees arguably achieved a high degree of success here. We discern no abuse of discretion on the part of the trial court in failing to reduce the award based upon the results obtained by appellees' counsel. Appellant's first, second, and third assignments of error are overruled.

Appellant's fourth assignment of error asserts that the trial court abused its discretion in awarding an enhancement of $16,765 to the reasonable fee award. Courts have allowed enhancement of the fee award in cases involving enforcement of federal claims or state claims which share a common nucleus of operative fact with asserted federal claims. *Hensley v. Eckerhart* (1983), 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40, 51; *Gibney, supra; Doe, supra*. Furthermore, the Supreme Court of Ohio in *Bittner*, 58 Ohio St.3d at 145, 569 N.E.2d at 466, citing *Hensley*, appeared to recognize that " '[t]he product of reasonable hours times a reasonable rate does not end the inquiry' " and that " '[t]here remain other considerations that may lead the * * * court to adjust the fee upward or downward.' " However, the *Bittner* syllabus, taken literally, does not expressly recognize any further "enhancement" following application of the DR 2–106(B) factors and does not address the propriety of an enhancement multiplier. Indeed, the predicate of "exceptional success" in enhancement cases involving federal claims is already subsumed in the "results obtained" factor in DR 2–106(B)(4).

■ Assuming, *arguendo*, that enhancement of the reasonable fee computation is allowable in Ohio where purely state law claims are involved, *Hensley* states:

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an

enhanced award may be justified. * * * " *Id.*, 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 52. See, also, *Blum v. Stenson* (1984), 465 U.S. 886, 901, 104 S.Ct. 1541, 1550, 79 L.Ed.2d 891, 903.

As noted previously, since acknowledgement of the "results obtained" generally is already contained in the determination to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award. *Blum* at 900, 104 S.Ct. at 1549, 79 L.Ed.2d at 902.

The trial court determined that use of the enhancement multiplier was warranted because appellees were "severely hampered" by prior binding factual findings of the Reclamation Board of Review, the unclear state of the law, and their success was "noteworthy." However, as appellant notes, appellant was likewise hampered by the prior Reclamation Board of Review finding that it had caused the contamination of appellees' spring. The trial court apparently granted the enhancement because of the purported difficulty of establishing the merits of appellees' case. Appellees contended in their reply memorandum during the proceedings below that "[g]iven the significant risk of nonpayment, a risk multiplier is appropriate in this case to encourage, as a matter of public policy, cases arising from violations of mining and pollution laws."

In *Burlington v. Dague* (1992), 505 U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449, the Supreme Court of the United States held that enhancement of attorney fees above the "lodestar" to reflect a contingent fee agreement is not permitted in attorney fee awards under federal environmental fee-shifting statutes. The *Burlington* court stated:

"We note at the outset that an enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar. The risk of loss in a particular case (and, therefore, the attorney's contingent risk) is the product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits. The second factor, however, is ordinarily reflected in the lodestar—either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so. *Blum, supra* [465 U.S.] at 898–899 [79 L.Ed.2d at 901–902, 104 S.Ct. at 1548–1549]. Taking account of it again through lodestar enhancement amounts to double-counting. *[Pennsylvania v.] Delaware Valley II,* 483 U.S. [711] at 726–727 [97 L.Ed.2d 585, at 598–599, 107 S.Ct. 3078 at 3087–3088] (plurality opinion).

"The first factor (relative merits of the claim) is not reflected in the lodestar, but there are good reasons why it should play no part in the calculation of the award. It is, of course, a factor that *always* exists (no claim has a 100% chance of success), so that computation of the lodestar would never end the court's inquiry in contingent-fee cases. See *id.,* at 740 [97 L.Ed.2d 585, at 607, 107 S.Ct.

3078, at 3094] (Blackmun, J., dissenting). Moreover, the consequence of awarding contingency enhancement to take account of this 'merits' factor would be to provide attorneys with the same incentive to bring relatively meritless claims as relatively meritorious ones. Assume, for example, two claims, one with underlying merit of 20%, the other of 80%. Absent any contingency enhancement, a contingent-fee attorney would prefer to take the latter, since he is four times more likely to be paid. But with a contingency enhancement, this preference will disappear: the enhancement for the 20% claim would be a multiplier of 5 (100/20), which is quadruple the 1.25 multiplier (100/80) that would attach to the 80% claim. Thus, enhancement for the contingency risk posed by each case would encourage meritorious claims to be brought, but only at the social cost of indiscriminately encouraging nonmeritorious claims to be brought as well. We think that an unlikely objective of the 'reasonable fees' provisions. 'These statutes were not designed as a form of economic relief to improve the financial lot of lawyers.' *Delaware Valley I*, 478 U.S. at 565 [92 L.Ed.2d 439, at 456, 106 S.Ct. 3088, at 3098]." (Emphasis *sic*.) *Id.*, 505 U.S. at ——, 112 S.Ct. at 2641–2642, 120 L.Ed.2d at 456–457.

█ Analogously, assuming that enhancement is allowable for violations of Ohio law with no concomitant federal claim, we are persuaded that, as a matter of law, appellees failed to establish the level of "exceptional success" required by *Hensley* and *Blum* to warrant enhancement. More particularly, the factors relied upon by appellees and the trial court, *i.e.*, the difficulty of establishing the merits, were already subsumed in the computation of the "lodestar." *Burlington, supra*. Therefore, the trial court abused its discretion in awarding the fifty percent enhancement in the attorney fee award. Appellant's fourth assignment of error is sustained.

Appellant's fifth assignment of error asserts that the trial court abused its discretion by awarding expert fees which were not related to the matter in litigation. Appellant objected to the $457 invoice of geologist Eberhard Werner and the $1,582.65 invoice of geologist Richard S. diPretoro on the basis that all of Werner's and most of diPretoro's billings were not related to the case.

█ Without statutory authorization, a trial court should not tax an expert's fee as costs to be paid by the losing party. *Moore v. Gen. Motors Corp.* (1985), 18 Ohio St.3d 259, 260, 18 OBR 314, 315, 480 N.E.2d 1101, 1102; see, also, *Howard v. Wills* (1991), 77 Ohio App.3d 133, 138–139, 601 N.E.2d 515, 518–519; *Gnepper v. Beegle* (1992), 84 Ohio App.3d 259, 616 N.E.2d 960. Here, R.C. 1513.15(H) specifically provides for recovery of "expert witness fees." We initially note that appellant does not claim that expert fees are not available to prevailing plaintiffs pursuant to R.C. 1513.15(H) where those experts do not testify, *i.e.*, are not "witnesses." Rather, appellant's fifth assignment of error

contends only that the challenged fees were not recoverable because they were "not related" to the case. Consequently, we need not resolve the issue of whether the challenged fees were improper because R.C. 1513.15(H) only envisions reimbursement for "expert *witness* fees."

 Appellant claims Werner's fees were not related to the litigation since he did not testify at trial and did not have his samples or tests introduced into evidence. Appellees contend that Werner's samples and tests were relied upon by their experts who testified at trial. Since appellant failed to order any transcript of the jury trial, we presume that the trial court had sufficient information before it to support a determination that Werner's fees *were* related to the case.

Appellant further asserts that much of diPretoro's work was spent on an unrelated well complaint. However, as stated by appellees, both below and on appeal, appellees' fee petition expressly reduced diPretoro's fees by $50 for the time spent on the well complaint issue. The trial court did not abuse its discretion in rejecting appellant's argument that Werner's and diPretoro's expenses were not related to the case. Appellant's fifth assignment of error is overruled.

 Appellant's sixth assignment of error asserts that the trial court abused its discretion by awarding expert fees which included the time for experts to remain at trial to act as consultants at trial after they had testified. Appellant challenges only those portions of EEI Geophysical's and Gary D. Storrick's invoices which included $1,000 each for expert witness testimony and not their expenses related to preparation for trial.

As noted by appellees, experts can serve vital interests by remaining present at trial following testimony, *e.g.,* availability for rebuttal testimony in addition to acting in a consulting capacity. Therefore, in the absence of any cited authority to the contrary, we are not persuaded that the trial court abused its discretion in allowing these expert fees. Appellant's sixth assignment of error is overruled.

Accordingly, in that we have sustained appellant's fourth assignment of error, we reverse that portion of the judgment awarding appellees a $16,765 enhancement of their attorney fees and remand the cause to the trial court for entry of a judgment in accordance with this opinion. In all other respects, the judgment is affirmed.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded in part.*

PETER B. ABELE and STEPHENSON, JJ., concur.