This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Danyle Fowler, appeals the decision of the Akron Municipal Court, which convicted her of child endangering and sentenced her accordingly. This Court affirms.
 I. {¶ 2} On July 17, 2002, appellant was charged with child endangering in violation of Akron City Code Section 135.17. Appellant entered a plea of not guilty and the case proceeded to a bench trial on September 16, 2002. At the conclusion of the trial, appellant was found guilty of child endangering. On October 21, 2002, the trial court sentenced appellant to 180 days in Summit County Jail. Appellant was transferred per court order to Glenwood Jail in early November of 2002.
 {¶ 3} Appellant timely appealed and filed a motion to stay the execution of her sentence, which the trial court granted on January 6, 2003. Appellant sets forth two assignments of error for review.
 II. FIRST ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED WHEN IT ADMITTED AND CONSIDERED EVIDENCE OF APPELLANT FOWLER'S PRIOR CRIMINAL RECORD WHEN APPELLANT FOWLER DID NOT TESTIFY AND DID NOT OFFER EVIDENCE, IN VIOLATION OF APPELLANT FOWLER'S SIXTH AMENDMENT RIGHT OF CONFRONTATION UNDER THE UNITED STATES CONSTITUTION AND EVID.R. 609(A)."
 {¶ 4} In her first assignment of error, appellant argues that the trial court erred when it admitted and considered evidence of her prior criminal record because appellant did not testify or offer evidence at her trial. This Court disagrees.
 {¶ 5} Appellant's claim that the trial court erred requires us to review the record of the trial court under an abuse of discretion standard. When reviewing the record, this Court adheres to the standard that an abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency," Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621, or an arbitrary, unreasonable, or unconscionable attitude on the part of the court. Schafer v. Schafer (1996),115 Ohio App.3d 639, 642. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Freeman v. Crown City Mining, Inc. (1993),90 Ohio App.3d 546, 552.
 {¶ 6} In this case, appellant claims the trial court abused its discretion by considering testimony concerning appellant's prior criminal record. Specifically, appellant refers to the re-direct testimony of Paula Fowler, appellant's mother, and contends that the trial court improperly admitted and considered that testimony despite the fact that it was inadmissible evidence under both the 6th Amendment right of confrontation and Evid.R. 609(A) governing impeachment by evidence of a conviction of crime.
 {¶ 7} However, after careful review of the trial transcript, this Court finds appellant's argument without merit for two reasons. First, appellant had a bench trial in a criminal case; consequently, a presumption arises that the trial court "considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." State v. Post (1987),32 Ohio St.3d 380, 384, quoting State v. White (1968), 15 Ohio St.2d 146,151. Furthermore, absent some showing to the contrary, a reviewing court will presume that the trial court considered only properly admitted evidence when it acts as the trier of fact in a bench trial. Columbus v.Guthmann (1963), 175 Ohio St. 282, paragraph three of the syllabus. In this case, not only does this Court make such presumptions, but the trial court clearly stated on the record that it was not allowed to consider the testimony about appellant's prior criminal record and that it would not do so, showing that the trial court did not use its discretion at all.
 {¶ 8} Secondly, assuming without deciding that the trial court had considered appellant's prior criminal record, this Court notes that it was appellant's defense counsel who first asked Mrs. Fowler about appellant's prior criminal record during his cross examination of her. Defense counsel specifically questioned Mrs. Fowler about her concern over appellant's lifestyle, asking the following:
"Q. And you know she has had a drug problem in the past.
"A. Yes, I do.
"Q. You know that she's been in prison.
"A. Yes."
 {¶ 9} It was only after defense counsel "opened the door" by asking these questions of Mrs. Fowler that the City, during its re-direct examination, questioned her further about appellant's drug use and time in prison. As defense counsel "opened the door" for further questioning of appellant's prior criminal history by the City and the trial court, such conduct was invited error on appellant's part. It is well settled that "[a] party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." Lester v. Leuck
(1943), 142 Ohio St. 91, paragraph one of the syllabus.
 {¶ 10} For the abovementioned reasons, this Court cannot find that the trial court erred by admitting or considering evidence of appellant's prior criminal record. Appellant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR "THE CITY FAILED TO MEET ITS CONSTITUTIONAL BURDEN OF PROOF BEYOND A REASONABLE DOUBT WHEN IT FAILED TO OFFER SUFFICIENT EVIDENCE OF A SUBSTANTIAL RISK OF HARM TO THE CHILD'S HEALTH OR SAFETY ON THE CHARGE OF ENDANGERING CHILDREN IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 {¶ 11} In her second assignment of error, appellant argues that there was not sufficient evidence presented by the City to convict her of child endangering. This Court disagrees.
 {¶ 12} When reviewing the legal sufficiency of the evidence to support a criminal conviction, this Court must:
 "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 13} "`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the [trier of fact] or whether the evidence is legally sufficient to support the *** verdict as a matter of law." (Citation omitted.) State v.Thompkins (1997), 78 Ohio St.3d 380, 386. A reversal of a verdict based on the insufficiency of the evidence means that no rational trier of fact could have found the defendant guilty. Id.
 {¶ 14} Akron City Code Section 135.17(A) defines the offense of Endangering Children and provides, in relevant part, that "[n]o person, being the parent *** of a child under 18 *** shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." Appellant claims that the City failed to offer sufficient evidence of a substantial risk of harm to her child's health or safety on its charge of child endangering against appellant.
 {¶ 15} At trial, the City presented three witnesses to testify to the elements of child endangering by appellant. Appellant's eleven year-old son, Bradley, testified that on the evening of July 13, 2002, when he arrived home from visiting with his grandma, appellant seemed angry at him. He stated that appellant gave him an envelope with something in it and told him to go down to the corner outside of a certain store, make a clicking noise, and someone would come over to him and give him something. Bradley further testified that he went to the corner and made the clicking noise as he passed by five men standing in a group, upon which one man approached him, took the envelope out of his hand, and placed a very small, torn paper bag in his hand. He stated that the man then took the torn paper bag back out of his hand and turned him around, at which time he realized that his grandma had pulled up behind him and was calling to him to get in her van. Once Bradley got in the van, he testified that his grandma asked him if he was there buying drugs and he said yes and she took him to the police station.
 {¶ 16} After both parties questioned him, the trial court also examined Bradley, having him testify to the sequence of events again in order to confirm they were consistent with Bradley's earlier testimony. The trial court also asked him the following questions:
 "Q. When you went to the store and there's all those people there and the guy gave you the bag, were you afraid?
"A. Somewhat.
"Q. Why were you afraid?
"A. Because I didn't know any of `em.
"***
 "Q. Did you talk to the police about what happened? And did you know why you were talking to the police?
"A. Yeah.
"Q. Why was that?
"A. Because my mom had sent me out to buy drugs.
"Q. Did you know that that's what you were doing when you did it?
"A. All I know is she gave me an envelope and she wanted-
"Q. You didn't know, you didn't think you were going to buy drugs then.
"A. I thought it was more medicine for her stomach.
 "Q. Medicine for her stomach? Okay. Had she sent you to buy medicine for her stomach before?
"A. Mm-hm.
"Q. Yes? Is that why you thought that?
"A. Yeah.
"Q. Was it the same kind of deal as this?
"A. Yeah."
 {¶ 17} In addition to Bradley, the City presented the testimony of Paula Fowler, appellant's mother and Bradley's grandma. Mrs. Fowler testified that when she returned Bradley to appellant's house on July 13, 2002, appellant became very angry at him while they were all standing in her front yard. She stated that she asked appellant why she has to talk to Bradley like that and say all those things to upset him. As a result, Mrs. Fowler testified that appellant became angry at her and so she, her husband and Bradley's siblings got back in their van to leave. Mrs. Fowler testified that she saw appellant grab Bradley by the hair and pull him in the house. She stated that she called the police and then attempted to go to CSB to seek help for Bradley. Mrs. Fowler testified that it was when she called a neighbor of appellant's to check if the police had responded to her call that she found out Bradley was not home, but out on the streets with some envelope from appellant.
 {¶ 18} She further testified that she returned to the area and began driving around, searching for Bradley on the streets. Mrs. Fowler stated that she discovered him outside at a corner, surrounded by older men, and that everyone in the van began calling for him. She explained that, as they called for Bradley, a man turned the boy so that his back was facing them, began shuffling around with Bradley over something, and then turned him back around to face them. Mrs. Fowler testified that Bradley got in their van and, after she questioned him about what the men were doing, she asked him if appellant had sent him there to buy drugs and he said yes. She asked him if he had the drugs and he said that the man took the bag back from him and kept the envelope as well. Mrs. Fowler testified she then took Bradley to the police station.
 {¶ 19} The City also presented the testimony of Sergeant Starvaggi, Sergeant Detective in the Juvenile Detective Bureau of the Akron Police Department, who investigated the case and interviewed both Bradley and Mrs. Fowler. Sergeant Starvaggi provided testimony that corroborated Bradley's testimony. He also testified regarding what Bradley and Mrs. Fowler told him during the interview:
 "[Bradley] said that he did that, and someone gave him some crack cocaine. I asked him if he knew what that was. He said yes, that it was drugs. I asked if he had ever seen his mother use it, and he said yes. Or I asked if he had seen his mother smoking it, and he said yes he has, in the past. I asked if he had ever done this before, going to buy drugs, and he said yeah, on another occasion he had to go to an apartment. The same thing, where he was to take an envelope and a gentleman inside gave him some crack cocaine that he brought back to his mother. His grandmother then told him to tell me about cooking, and I asked him what he was talking about. And he said that people would come over to the apartment and cook ounces. And I said, well would you explain that? And he said that they would put the stuff in a pan and cook it for awhile. And that's how you cook crack cocaine. I asked him for some of the descriptions of the individuals. He gave me that, and that was pretty much our conversation, as far as him buying the drugs and some of the things going on in the apartment."
 {¶ 20} Sergeant Starvaggi also testified concerning the store that Bradley walked to alone on the date of the incident. He described its location and explained that he had patrolled that district in the past, that it is a very active area for street narcotics, specifically crack cocaine, and that numerous gang members hang out and sell drugs at that store.
 {¶ 21} When asked whether he would characterize the store as a dangerous area, Sergeant Starvaggi stated:
"A. Absolutely.
"Q. Why is that?
 "A. Again, the people hanging out at the store are gang members. The high drug activity just lends to other crimes-robberies, stolen cars, felonious assaults, and it's just a short distance from Cole Avenue, which is a similar area, and we've had numerous homicides, drug related homicides, on Cole Avenue. So this area has developed into the same type of area.
 "Q. Based on your experience in the area and your investigation of this case, would you say the allegations, if true, would have posed a danger to Bradley?
"A. Absolutely.
"Q. And why is that?
 "A. If he refused to leave, let's say they just take the money and refused to give him the narcotics and he wouldn't want to go home with neither the narcotics nor the money and if [he] put a fight, these individuals are bigger than him, dangerous[.]"
 {¶ 22} After reviewing the above testimony in a light most favorable to the City, a rational trier of fact could have found this testimony sufficient to prove beyond a reasonable doubt that appellant created a substantial risk of harm to her child's health and safety by ordering him to walk alone to a dangerous, high crime area to purchase drugs for her from drug dealers. The evidence presented to the trial court was more than sufficient to convict appellant of child endangering. Appellant's second assignment of error overruled.
 III. {¶ 23} Accordingly, appellant's two assignments of error are overruled. The judgment of the trial court is affirmed.
WHITMORE, J. and BATCHELDER, J. CONCUR.