[Cite as *Young v. Conry*, 2013-Ohio-1223.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

JAMES YOUNG, et al.

    Appellants

    v.

MARTY CONRY, et al.

    Appellees

C.A. No.    12CA010152

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    2008PC00001

DECISION AND JOURNAL ENTRY

Dated: March 29, 2013

MOORE, Judge.

{¶1} Plaintiffs-Appellants, James H. Young, et al, appeal from the December 15, 2011 judgment entry of the Lorain County Court of Common Pleas, Probate Division. We affirm.

I.

{¶2} Crete M. Hoffman died testate on July 25, 2007. In her Last Will and Testament, Ms. Hoffman left the contents of her home to Goodwill Industries of Lorain, Ohio, and also made ten specific monetary bequests to both individuals and organizations. In addition, Ms. Hoffman divided the balance of her estate as follows: 20% to St. Joseph Catholic Church of Amherst, Ohio, 20% to St. Paul Lutheran Church of Amherst, Ohio, and the remaining 60% shared equally between Defendants-Appellees, John and Cathy Sekletar ("the Sekletars"), or their survivor. Further, Ms. Hoffman named her attorney, Defendant-Appellee, Martin J. Conry, as the executor of her estate, and the Sekletars as alternate executors.

{¶3} Although Ms. Hoffman died a widow with no children of her own, she had several nieces and nephews, including James H. Young, Suzanne Dolesch, Cheryl Yagielo, John R. Young, Deborah Bibb, Judy Broud, Nancy Back, Thomas H. Young, Robert Young, and David A. Young ("Appellants"). However, Ms. Hoffman's will did not bequeath any specific gifts to Appellants, nor were they named as beneficiaries of her residuary estate.

{¶4} In January of 2008, Appellants filed a complaint to contest Ms. Hoffman's will. In their complaint, Appellants alleged that they may have an interest under the will because Ms. Hoffman executed it while under "severe pressure" and the "undue influence" of Mr. Conry and the Sekletars. Further, Appellants alleged that Mr. Conry and the Sekletars intentionally interfered with their expectancy of inheritance as Ms. Hoffman's only surviving heirs. Mr. Conry and the Sekletars filed answers to the complaint denying the allegations and discovery ensued.

{¶5} At the close of discovery, Mr. Conry and the Sekletars each filed motions for summary judgment. Additionally, pursuant to Civ.R. 9(B), Mr. Conry filed a motion to dismiss the claims of fraud because Appellants failed to state them with particularity. Appellants filed a brief in opposition to the motions to dismiss and for summary judgment, and Mr. Conry filed a reply. The trial court granted Mr. Conry's motion to dismiss and both defense motions for summary judgment.

{¶6} Appellants timely appealed, setting forth two assignments of error for our consideration.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR IN REFUSING TO EXTEND THE DISCOVERY CUT-OFF AND TO EXTEND OR ENLARGE DISPOSITIVE MOTIONS AND BRIEFING DATES TO ALLOW [APPELLANTS] TO INSPECT AND FORENSICALLY EXAMINE RELEVANT REQUESTED ORIGINAL DOCUMENTS AFTER DEFENDANT CONRY FAILED TO ALLOW ACCESS TO [] THE ORIGINAL DOCUMENTS AS REQUESTED BY [] [APPELLANTS] PRIOR TO THE EXPIRATION OF THE DISCOVERY CUT-OFF DEADLINE.

{¶7}   In their first assignment of error, Appellants argue that the trial court erred in not extending the discovery cut-off date in order for Appellants to submit four sets of handwritten notes, allegedly written by Ms. Hoffman, to a forensic document examiner to perform a handwriting analysis and an ink age determination.

{¶8}   In response, Mr. Conry and the Sekletars argue that (1) the trial court did not abuse its discretion because it extended the parties' discovery cut-off date on three prior occasions, and (2) Appellants were unduly lax in their efforts to conduct discovery.

{¶9}   "[A]bsent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues." *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 469 (1998).   An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Freeman v. Crown City Mining, Inc.*, 90 Ohio App.3d 546, 552 (4th Dist.1993).

{¶10}  Here, the record indicates that Appellants served discovery requests upon Mr. Conry and the Sekletars in May of 2009, and July of 2009, respectively.  Likewise, in July of

2009, Mr. Conry served discovery requests upon Appellants. At that time, the discovery cut-off date was October 31, 2009. Mr. Conry responded to Appellants' request for discovery in August of 2009, and the trial court granted Appellants leave to respond to Mr. Conry's discovery requests until September of 2009.

{¶11} The trial court then extended the discovery cut-off date to May 28, 2010.

{¶12} In September of 2010, Appellants filed a motion to compel discovery alleging that Mr. Conry issued incomplete responses to their interrogatories, requests for production of documents, and requests for admission. At the hearing on the motion to compel, Mr. Conry agreed to supplement his responses to Appellants' discovery requests, and both parties agreed to dates for depositions. Prior to the scheduled depositions, both parties supplemented their previous discovery responses. The trial court then issued an order stating that discovery must be completed by February 18, 2011, and that any dispositive motions must be filed by March 18, 2011.

{¶13} On February 17, 2011, the day before the discovery cut-off date, Appellants filed a motion to extend time periods. Appellants alleged that in November of 2010, Mr. Conry produced photocopies of documents purporting to be the writings of Ms. Hoffman. The documents consisted of notes regarding the drafting of Ms. Hoffman's will. Appellants further alleged that this was the first time they had seen these documents, and, as such, needed additional time to procure the originals in order to submit them for expert testing at Speckin Forensic Laboratories. Instead of immediately moving the trial court for more time to conduct discovery in November of 2010, Appellants waited approximately three months to (1) request the original documents from Mr. Conry, and (2) file their motion for an extension of time with the trial court. Lastly, although the complaint was filed in 2008, and discovery commenced in 2009,

Appellants waited three years to take Mr. Conry's and the Sekletars' depositions. The trial court accommodated both parties throughout the course of the litigation. In light of the record before us, we cannot say that the trial court abused its discretion in denying Appellants' motion to extend time periods for discovery.

{¶14} Appellants' first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO APPELLEES WHEN THE COURT CONSIDERED THE EVIDENCE PRESENTED WITH REGARD TO SUMMARY JUDGMENT, WHICH INCLUDED THE CREDIBILITY OF WITNESS DEFENDANT CONRY.

{¶15} In their second assignment of error, Appellants argue that Mr. Conry made false statements of fact under oath which brought his credibility into issue and made the trial court's granting of summary judgment improper. We disagree.

{¶16} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." (Citation omitted.) *Garner v. Robart*, 9th Dist. No. 25427, 2011-Ohio-1519, ¶ 8.

{¶17} Pursuant to Civ.R. 56(C), summary judgment is appropriate when:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a summary judgment motion, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*,

75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 293, quoting Civ.R. 56(E).

{¶18} As stated above, Appellants alleged that Mr. Conry and the Sekletars exerted severe pressure and undue influence upon Ms. Hoffman with regard to the drafting of her will. R.C. 2107.74 provides, in relevant part, that "[o]n the trial of any will contest under section 2107.71 of the Revised Code, the order of probate is prima-facie evidence of the attestation, execution, and validity of the will or codicil." Further, "[a] presumption arises from the order of admission of the will to probate that the testator was free from restraint. The burden of proving undue influence is upon the contestants * * *." *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 64 (1991), quoting *West v. Henry*, 173 Ohio St. 498, 502 (1962).

{¶19} In *West* at 501, the Supreme Court of Ohio stated that "undue influence to avoid a will must so overpower and subjugate the mind of the testator as to destroy his free agency and make him express the will of another rather than his own, and the mere presence of influence is not sufficient." In addition, "[u]ndue influence must be present or operative at the time of the execution of the will resulting in dispositions which the testator would not otherwise have made." *Id*. According to *West* at 510-511, "[t]he essential elements of undue influence are: (1) a susceptible testator, (2) another's opportunity to exert it, (3) the fact of improper influence exerted or attempted and (4) the result showing the effect of such influence."

{¶20} In their motions, Mr. Conry and the Sekletars argued that there is no evidence that Ms. Hoffman was under severe pressure or undue influence at the time she executed her will, and, as a matter of law, summary judgment must be granted in their favor. In support of this argument, Mr. Conry averred that: (1) he did not meet Ms. Hoffman prior to drafting her will in

2005, (2) he does not consider the Sekletars to be close personal friends, (3) Ms. Hoffman's capacity to sign a will was never in question, (4) Ms. Hoffman arrived at their first appointment with notes for him to use in preparing her will, (5) Ms. Hoffman did not appear to be in poor health and walked to all of her appointments, and (6) the Sekletars had no idea that Ms. Hoffman made them beneficiaries in her will, and were not informed of this fact until after Ms. Hoffman's death. Further, Mr. and Mrs. Sekletar averred that they: (1) had no knowledge that Ms. Hoffman made a will, (2) had no knowledge that they were named beneficiaries in the will until after Ms. Hoffman's death, and, (3) never had a discussion with Ms. Hoffman regarding her will.

{¶21} Mr. Conry also attached Appellants' responses to discovery as further proof that no genuine issues of material fact exist as to whether Ms. Hoffman was severely pressured or unduly influenced in the drafting and executing of her Last Will and Testament. Further, the deposition testimony of John R. Young, David A. Young, Suzanne Dolesch, Thomas H. Young, Judy Broud, Cheryl Yagielo, and James H. Young collectively shows that there are no genuine issues of material fact with regard to any of the claims raised in Appellants' complaint.

{¶22} In his deposition, John R. Young stated his reason for suing Mr. Conry as follows: "[w]ell, because, based on the way I knew my aunt and every time I've ever talked to her, she had nothing at all whatsoever against anybody in the family. She never ever said anything to me about having problems with anybody in the family. And it surprised me when we were told that other people were in charge of everything." John R. Young also stated that he knew of no facts supporting the claim that the Sekletars exerted severe pressure or undue influence upon Ms. Hoffman.

{¶23}  David A. Young admitted that he had no factual basis for the claims in the complaint, and stated that, in the two-and-a-half years preceding her death, he often saw Ms. Hoffman at Hot Dog Heaven, walking around town, and at bingo several times a week.

{¶24}  Suzanne Dolesch attested that she sued Mr. Conry because of her aunt's feelings about family and "the fact that she didn't mention [the will] to anybody at all."  Ms. Dolesch also admitted that Ms. Hoffman was a very private person.

{¶25}  Thomas H. Young, Ms. Hoffman's godson, admitted that in the two-and-a-half year period preceding her death, he often had telephone conversations with her and she "sounded all right."  Additionally, when asked if he came to learn of any fact that would support the claim that Mr. Conry applied undue influence upon Ms. Hoffman, Thomas H. Young stated "[u]ndue influence, what's that mean?"

{¶26}  Judy Broud explained her reason for suing Mr. Conry in the following manner: "[b]ecause I feel like, knowing my aunt, she would have done something to show the family that she cared.  She was a very private person, but I think she loved us all."  Ms. Broud also attested that she did not know the Sekletars, and only saw them at hospice.

{¶27}  Cheryl Yagielo described Ms. Hoffman as her "second mom," and stated that Ms. Hoffman was walking downtown, shopping, and playing bingo up until eight months prior to her death.   Ms. Yagielo also admitted to having no factual support for the claims made in the complaint, and indicated that Ms. Hoffman was a "very private person."

{¶28}  Finally, Mr. James H. Young, a practicing attorney in Ohio, attested that Ms. Hoffman was a functioning person, and that he had no specific facts to back up the claims in the complaint, only "circumstantial evidence" that his aunt would not have signed the Last Will and Testament.

{¶29} Based upon the foregoing, we conclude that Mr. Conry and the Sekletars met their initial *Dresher* burdens of pointing to some evidence that Appellants could not prove the essential elements of undue influence, and, specifically, the first and second elements which require a "susceptible testator," and "another's opportunity to exert" influence on the testator. *See Dresher* at 292-293, and *West* at 510-511.

{¶30} In their brief in opposition, Appellants contend that there are genuine issues of material fact with respect to testamentary capacity, undue influence, and witness credibility. In support of this position, Appellants attach: (1) the July 30, 2007, and August 7, 2007, transcripts of two conversations between Mr. Conry and Mr. James H. Young, (2) a letter to Mr. Conry from Mr. James H. Young regarding some of Ms. Hoffman's personal possessions, including antique furniture, a family bible, and a doll collection, and (3) the affidavit of James H. Young.

{¶31} First, with regard to testamentary capacity, we note that Appellants did not allege in their complaint that Ms. Hoffman lacked testamentary capacity, nor did they amend their complaint to later include this allegation. Appellants raised this issue for the first time in their brief in opposition to Mr. Conry's and the Sekletars' motions for summary judgment. However, notwithstanding any procedural issues, Appellants have failed to set forth any specific facts regarding Ms. Hoffman's alleged lack of testamentary capacity that would create a genuine issue for trial. In fact, the record indicates the opposite: that Ms. Hoffman was alert, aware, and active in the community until approximately eight months prior to her death.

{¶32} Second, with regard to undue influence, Appellants have also failed to set forth any specific facts that create a genuine issue for trial. In his affidavit, James H. Young focuses upon events that allegedly happened *after* Ms. Hoffman's death, and, as such, are not relevant to support a claim of undue influence in executing her Last Will and Testament. For example, the

issue of how Mr. Conry came to possess one of Ms. Hoffman's guns, while acting as the executor of her estate, is not indicative of whether he exerted severe pressure and undue influence upon her in the drafting of her will. Further, the transcribed conversations between Mr. Conry and Mr. James H. Young, and the letter sent to Mr. Conry regarding gathering certain items of personal property, are also dated *after* Ms. Hoffman's death. This evidence does not support Appellants' claims of severe pressure or undue influence or create genuine issues of material fact regarding the claims. *See Daubel v. Dineen*, 9th Dist. No. 11CA009994, 2012-Ohio-5924, ¶ 40 (affirming the granting of summary judgment on the issue of undue influence where the appellants failed to meet their reciprocal *Dresher* burden, and failed to prove the essential element of undue influence).

{¶33} Third, with regard to Mr. Conry allegedly making false statements of fact regarding Ms. Hoffman's gun and other possessions, there is no evidence in the record that the trial court improperly weighed the evidence in order to grant summary judgment in favor of Mr. Conry and the Sekletars. In its decision, the trial court stated:

> How the gun came into [Mr.] Conry's possession is not a material fact relating to the issues on summary judgment. The fact that the gun was not included in the inventory, was given to James [H.] Young, and was not receipted, is a question for the Inventory and Schedule of Assets in case no. 2007ES00724. * * * The issues relating to the testimony concerning the gun, which occurred in July of 2007, two years *after* the Will was drafted, are immaterial to the discussion of whether fraud, severe pressure or undue influence occurred in July of 2005. These issues do not determine the outcome of the will contest.

(Emphasis sic.)

{¶34} Therefore, based upon the record before us, we conclude that Appellants have not met their reciprocal *Dresher* burden by setting forth specific facts showing that there is a genuine issue for trial. *See Dresher* at 293. As such, we cannot say that the trial court erred in granting Mr. Conry's and the Sekletars' motions for summary judgment.

**{¶35}** Appellants' second assignment of error is overruled.

### III.

**{¶36}** In overruling Appellants' two assignments of error, the judgment of the Lorain County Court of Common Pleas, Probate Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

CARLA MOORE
FOR THE COURT

BELFANCE, J.
CONCURS IN JUDGMENT ONLY.

CARR, J.
DISSENTING.

**{¶37}** I respectfully dissent.

**{¶38}** This Court recognizes:

In ruling on a motion for summary judgment the trial court is not permitted to weigh the evidence or choose among reasonable inferences. *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121 (1980). Rather, the court must evaluate the evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party. *Id*.

*Steward v. Urig*, 176 Ohio App.3d 658, 2008-Ohio-3215, ¶ 10, quoting *Harry London Candies, Inc. v. Bernie J. Kosar Greeting Card Co.*, 9th Dist. No. 20655, 2002 WL 185305 (Feb. 6, 2002). Moreover, "[t]he trial court cannot weigh credibility when considering evidentiary material presented in favor of, or in opposition to, a motion for summary judgment." *Helms v. Cahoon*, 9th Dist. No. 20527, 2002 WL 57978 (Jan. 16, 2002).

**{¶39}** In ruling on the defendants' motions for summary judgment, the trial court set out in great detail fifteen pages of "findings of fact." Later, while acknowledging that certain of the plaintiffs' allegations in the record were "possibly suggestive" of undue influence, it ultimately disregarded them. Although the trial court purported to grant summary judgment in favor of the defendants for the reason that the plaintiffs presented "no evidence" in support of the elements of undue influence, it was clear that it merely disregarded evidence presented by the plaintiffs on those elements. For example, the trial court found that there was "no evidence" that Mrs. Hoffman was a susceptible testator despite testimony by James H. Young that his 83-year old aunt had always taken orders from men and would do anything she was told to do. In addition, the trial court found that there was "no evidence" regarding why Mrs. Hoffman chose to disinherit her family when it was unclear that she had in fact disinherited them. There was no express disinheritance of them in her will. Moreover, the plaintiffs presented evidence of

discrepancies surrounding the information used to draft Mrs. Hoffman's will, because Attorney Conry alternately testified during his deposition that (1) Mrs. Hoffman brought him notes indicating how and to whom she wished to devise her property, and (2) that he was the one who hand wrote the names of the devisees.

{¶40} Based on my review of the record, I would conclude that the trial court, despite its assertions to the contrary, improperly weighed the evidence and credibility of witnesses when ruling on the motions for summary judgment. Accordingly, I would reverse the trial court's judgment and remand the matter for proper consideration of the motions. To be clear, I do not intend to imply how I would rule on the motions for summary judgment. It is the trial court that must properly consider the issues in the first instance. *Price v. Carter Lumber Co.*, 9th Dist. No. 26243, 2012-Ohio-6109, ¶ 22. I would simply remand for that purpose.

APPEARANCES:

MICHAEL J. SCHERACH, Attorney at Law, for Appellants.

PATRICK D. RILEY, Attorney at Law, for Appellee.

ANTHONY R. PECORA, Attorney at Law, for Appellee.

MICHAEL E. BROSKY, Attorney at Law, for Appellees.