[Cite as *Dickson & Campbell, L.L.C. v. Marshall*, 2017-Ohio-1032.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104133**

# DICKSON & CAMPBELL, L.L.C.

PLAINTIFF-APPELLEE

vs.

# JOY L. MARSHALL

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED IN PART, REVERSED IN PART
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-07-627533

**BEFORE:** Jones, P.J., Boyle, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** March 23, 2017

**ATTORNEY FOR APPELLANT**

Joy Lenore Marshall, pro se
2745 Scottwood Road
Columbus, Ohio 43209


**ATTORNEY FOR APPELLEE**

William P. Campbell
Elk & Elk Co., Ltd.
6105 Parkland Boulevard, Suite 200
Mayfield Heights, Ohio 44124

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant Joy Marshall[1] appeals from the trial court's final judgment in this case that was issued on February 11, 2016. The entry rendered judgment in favor of plaintiff-appellee Dickson and Campbell[2] in the amount of $50,433.70, and dismissed Marshall's counterclaims against Campbell with prejudice. For the reasons that follow, we affirm in part, reverse in part, and remand the case for a hearing with the parties for determination of the amount of relief Campbell is entitled to under the doctrine of quantum meruit.

**Procedural and Factual History**

{¶2} Marshall and William Campbell have been involved in an attorney fee dispute since 2006, which has resulted in extensive litigation. We derive most of the procedural and factual history from some of the prior litigation.

{¶3} The dispute arose from the case of *Tyus v. Grand Point Health Community*, Cuyahoga C.P. Case No. CV-05-571328, which was initiated in August 2005 by Campbell on behalf of Bessie Tyus. The gravamen of the complaint was that Tyus had suffered personal injuries due to negligence on the part of Grand Point Health Community, a nursing home where she had been a patient; other defendants were also named.

---

[1]Marshall was an Ohio attorney.

[2]Dickson and Campbell was an Ohio law firm and William Campbell was an attorney with the firm. Attorney Campbell, along with another attorney, handled the underlying case that gave rise to this case. The law firm is now disbanded. We refer only to attorney Campbell, who is solely pursuing this appeal.

{¶4} In late 2005 or early 2006, Tyus's daughter, Kimberly Tyus, contacted Marshall about her mother's case. *Disciplinary Counsel v. Marshall*, 142 Ohio St.3d 1, 2014-Ohio-4815, 27 N.E.3d 481, ¶ 7. Kimberly indicated that the family was not satisfied with Campbell's representation; Marshall advised Kimberly that she should remain with Campbell, whose fee contract entitled him to 40 percent of any recovery. *Id.* A few days later, however, Kimberly advised Marshall that the Tyus family had decided to retain new counsel, and Marshall agreed to take the case. *Id.* Kimberly sent Campbell a letter terminating his representation. *Id.*

{¶5} Marshall advised Kimberly that, under the doctrine of quantum meruit, Campbell could claim payment for the reasonable value of the services he provided from November 2004 through February 2006. *Id.* at ¶ 8. Marshall, therefore, instructed Kimberly to request a statement from Campbell setting his claim for the services he rendered and costs advanced on Tyus's behalf; Kimberly complied. *Id.*

{¶6} Campbell sent Kimberly a "settlement memorandum," setting forth $2,943.70 in expenses advanced by his firm; the memorandum did not make mention of any other amounts claimed to be owing by the Tyus family. *Id.* at ¶ 9. Kimberly forwarded the memorandum to Marshall and told Marshall that she did not believe that her family owed Campbell any additional fees. *Id.*

{¶7} On February 18, 2006, Kimberly entered into a contingent-fee contract with Marshall. *Id.* The contract specified that Marshall's fee would be one-third of any recovery, plus costs. *Id.*

**{¶8}** In a letter dated February 20, 2006, from Campbell to Kimberly, Campbell confirmed the termination of his services. *Id.* at ¶ 10. Campbell also stated in the letter that he intended to assert an attorney's lien on any settlement obtained based on his contingent-fee agreement with Tyus, or, alternatively, under the doctrine of quantum meruit. *Id.* The letter did not indicate his claim of the value of his services rendered. *Id.*

**{¶9}** The following day, February 21, 2006, Campbell filed a motion to withdraw as counsel in the trial court, and informed the court that he was asserting an attorney's lien for "fees and costs advanced," stating that the value was $2,943.70. *Id.* Campbell also sent a letter to Marshall, stating a claim for that same value. *Id.* at ¶ 11.

**{¶10}** In March 2006, approximately one month after she began her representation of Tyus, Marshall settled the case for $150,000. *Id.* at ¶ 12. On March 27, 2006, Campbell filed a notice of charging lien with the trial court and a motion to enforce it. *Id.* at ¶ 13. Campbell claimed, for the first time, that he had performed 95 percent of the work on the case and requested $47,500 in attorney fees, plus reimbursement for the costs he claimed to have advanced. *Id.* Because of the uncertainty regarding disbursement of the settlement proceeds, the defendants in the case gave the settlement check to the trial court, which set a hearing date for Campbell's motion. *Id.* at ¶ 14.

**{¶11}** The hearing on Campbell's motion started on April 28, 2006. *Id.* at ¶ 15. Campbell testified about his work on the case and claimed that the value of his services rendered was $47,500 and that he had advanced $2,943.70 in costs and, thus, he sought

$50,443.70 out of the settlement proceeds as his compensation. *Id.* An attorney assisting Marshall started cross-examining Campbell, but before the attorney had concluded, the trial court continued the hearing. *Id.* at ¶ 16. Marshall was not able to present her evidence regarding the work she claimed to have performed on the case. *Id.*

{¶12} Upon continuing the April 28 hearing, the trial court gave the settlement check to Marshall, and ordered her not to disburse more than $85,000 of the proceeds to Tyus. *Id.* at ¶ 17. The court ordered that Marshall put the remaining portion of the proceeds in trust, pending resolution of counsel's dispute. *Id.* The trial court gave Marshall a copy of a judgment entry memorializing its instructions. *Id.* The judgment entry was not filed until June 21, 2006, however. *Id.*

{¶13} Per the trial court's instruction, Marshall established a trust account for Tyus's benefit, and deposited the settlement proceeds into it on May 1, 2006. *Id.* at ¶ 18. Thereafter, the following activity on the account occurred: (1) on May 5, 2006, Marshall wrote herself a check for $1,127.66 as reimbursement for her costs, and distributed $63,352.34 to Tyus; and (2) on May 31, 2006, $241.15 in interest was transferred from the account "presumably to the state treasurer for the Legal Aid Fund." *Id.* Thus, a balance of $85,500 was in the account. *Id.* Shortly after Marshall had wired the above-mentioned money to Tyus, Kimberly, Tyus's daughter, sent $25,000 to Marshall as a "gift." *Id.* The "gift" came from the settlement funds Tyus had received. *Id.*

{¶14} On June 22, 2006, Campbell withdrew his motion to enforce the charging lien, advising the trial court that he would file a post-judgment motion to intervene in the

underlying case in order to seek enforcement of the charging lien. *Marshall v. Dickson & Campbell, L.L.C.*, S.D. Ohio No. 2:10-CV-00543; 2011 U.S. Dist. LEXIS 7472, *2 (Jan. 26, 2011).

**{¶15}** The following day, June 23, the settlement funds in the account were depleted by Marshall. *Id.* at *3. Marshall closed the account. *Disciplinary Counsel v. Marshall*, 142 Ohio St.3d 1, 2014-Ohio-4815, 27 N.E.3d 481, ¶ 21.

**{¶16}** Although there is some discrepancy in the prior litigation as to exactly how Marshall effectuated the depletion of the funds, the net effect was that she disbursed an additional $60,006.50 to Tyus, and she (Marshall) received an additional $25,493.50 for her claimed fees in the case. *Marshall*, 2011 U.S. Dist. LEXIS 7472 at *id.*; *Marshall*, 142 Ohio St.3d 1, 2014-Ohio-4815, 27 N.E.3d 48 at *id.* The disbursements occurred while the trial court's order directing Marshall how to distribute the settlement funds was still in effect. *Marshall* at *id.*

**{¶17}** On June 26, 2006, Campbell filed a motion to intervene. *Id.* On August 1, 2006, attorney Cassandra Collier-Williams ("Collier-Williams") entered a notice of appearance on behalf of Tyus. *Id.* The matter was set to continue the hearing on Campbell's request for compensation, and on the morning of the hearing, Marshall withdrew from the case. *Marshall*, 142 Ohio St.3d 1, 2014-Ohio-4815, 27 N.E.3d 481, at ¶ 25. Following her withdrawal, the trial court ordered Marshall to leave the courtroom, which she did. *Id.*

**{¶18}** Attorney Collier-Williams advised the court that Tyus did not wish to dispute

Campbell's fees and, therefore, she would not continue cross-examining him. *Id.* at ¶ 26.

Collier-Williams informed the court that Tyus's interest vis-a-vis Campbell and Marshall's fee dispute was only that her (Tyus's) attorney-fee obligation would not exceed the amount that the court had ordered Marshall to hold in trust. *Id.*

**{¶19}** The court, therefore, treated Campbell's request for compensation as unopposed, and granted him a judgment in the amount of $50,443.70. *Id.* at ¶ 27. The court ordered that Marshall would receive $4,557 as compensation for her work on the case. Marshall never presented testimony or evidence regarding her work on the case. *Id.*

**{¶20}** The trial court memorialized its decision in a judgment entry, and ordered Marshall in that entry to retain $4,557 for herself, and transfer the remaining $60,443 to Collier-Williams, who was to distribute $50,443.70 to Campbell and the remaining $10,000 to Tyus. *Id.* at 28.

**{¶21}** In August 2006, Collier-Williams informed the trial court that Marshall had failed to comply with the court's order. *Marshall v. Dickson & Campbell, L.L.C.*, 2011 U.S. Dist. LEXIS 7472, *3. Contempt and bankruptcy proceedings followed. In sum, Marshall was unable or unwilling to account for the funds that the trial court had ordered were Campbell's for his representation in the underlying case, she was held in contempt of court, and the amount was not discharged in bankruptcy. *Id.* at *15.

**{¶22}** Meanwhile, in June 2007, Campbell had filed this action, alleging that Marshall had engaged in fraud, conversion/theft, embezzlement, and tortious interference

with a business relationship. Marshall counterclaimed for fraud, interference with contractual relations, libel, abuse of process, and intentional and negligent infliction of emotional distress. A different trial court judge than the one who presided over the *Tyus* proceedings handled this case.

{¶23} Campbell filed a motion for summary judgment, seeking judgment on both his claims and Marshall's counterclaims. Marshall also filed a motion for summary judgment, seeking summary judgment in her favor on Campbell's claims. The trial court granted summary judgment in favor of Campbell on his fraud, theft, embezzlement and conversion claims and awarded him a judgment of $50,443.70, the same amount the trial court had awarded him in the *Tyus* case. Marshall appealed, but this court dismissed the appeal for lack of a final, appealable order because her counterclaims and Campbell's tortious-interference claims remained pending. *Dickson & Campbell, L.L.C. v. Marshall*, 8th Dist. Cuyahoga No. 90963, 2010-Ohio-2878, ¶ 9-13.

{¶24} In 2012, disciplinary proceedings were instituted against Marshall by disciplinary counsel for the Ohio Supreme Court, and Marshall was disciplined. The discipline consisted of a two-year suspension from the practice of law. *Disciplinary Counsel v. Marshall*, 142 Ohio St.3d 1, 2014-Ohio-4815, 27 N.E.3d 481, ¶ 85. Further, the Ohio Supreme Court ordered that Marshall was to "make full restitution" to Campbell "in an amount to be determined" by the trial court in this case. *Id.*

{¶25} Thereafter, the case was placed back on the trial court's active docket. Campbell dismissed his tortious interference claim, and the trial court issued a judgment

rendering judgment in favor of Campbell on Marshall's counterclaims and rendering a judgment for $50,433.70 in his favor. Marshall sought a hearing on the issue of restitution, which the trial court denied as moot.

{¶26} Marshall now appeals and sets forth the following three assignments of error for our review:

> I. The trial court erred in granting plaintiff's summary judgment motion where there were genuine issues of fact regarding his claims of fraud, embezzlement, and conversion/theft.
>
> II. The trial court erred in granting plaintiff's motion for summary judgment when the defendant was entitled to summary judgment on the issues of fraud, embezzlement, and conversion/theft, as a matter of law.
>
> III. The trial court erred, as a matter of public policy, when it promoted the abrogation of lawyer-client contracts, lawyer liability to discharged counsel and fee disputes in contravention of the Rules of the Ohio Supreme Court, the Due Process Clause, and the Freedom of Contract Clause.

**Law and Analysis**

**Summary Judgment**

{¶27} We first give consideration of Marshall's claims, as raised in her first two assignments of error, that the trial court erred in granting summary judgment in favor of Campbell.

{¶28} Our review of summary judgment decisions is de novo; that is, we apply the standards used by the trial court. *Long v. Tokai Bank of California*, 114 Ohio App.3d 116, 119, 682 N.E.2d 1052 (2d Dist.1996). Under well-established standards, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving

party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus.

**Fraud**

{¶29} In order to prevail on a cause of action for fraud, Campbell needed to show that Marshall: (1) made a representation or, where there is a duty to disclose, concealed a material fact; (2) she did so knowingly; and (3) with intent of misleading another into relying upon it. Further, Campbell needed to demonstrate that he justifiably relied upon the misrepresentation or concealment, and was proximately injured by his reliance. *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55, 514 N.E.2d 709 (1987).

{¶30} In support of his motion for summary judgment on his fraud count, Campbell relied on phrases used by the trial court in the *Tyus* case or other prior litigation to describe Marshall's behavior. Those phrases included "willfully disobeyed," "misbehaved in the performance of her duties as an officer of the Court," "disbursed and misappropriated funds in violation of this Court's order," and "held in contempt." But Campbell did not present any evidence that Marshall knowingly made a representation to him of a material fact (or concealed a material fact) with the intent of him justifiably relying on it. That she may have committed a "fraud on the court" does not establish that she committed fraud, under the elements outlined above, on Campbell.

{¶31} Further, we are not persuaded by Campbell's contention that "counsel

agreed" to Campbell's value of his services rendered. Campbell's contention relates to attorney Collier-Williams, who told the court that she and her client were not disputing Campbell's fees, but only wanted to ensure that Tyus's obligation to Campbell would not exceed the amount that the court had ordered Marshall to hold in trust. Thus, the "agreement" Campbell relies on was Collier-Williams's agreement, not Marshall's.

{¶32} In light of the above, the trial court should have granted summary judgment in favor of Marshall on Campbell's fraud claim.

**Theft/Conversion/Embezzlement**

{¶33} We consider the remaining counts of Campbell's complaint (excluding tortious interference with a business relationship because Campbell dismissed that count) together for efficiency's sake, as they are all related.

{¶34} Embezzlement generally occurs when an employee steals money from his or her employer. *Citimortgage, Inc. v. Rudzik*, 7th Dist. Mahoning No. 13 MA 20, 2014-Ohio-1472, ¶ 18. But it has been held that embezzlement has been codified in the theft statute under R.C. 2913.02(A)(2). *Id.* at ¶ 12. R.C. 2913.02(A)(2) provides that

> [n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]eyond the scope of the express or implied consent of the owner or person authorized to give consent.

A civil action can lie for theft, and by extension, embezzlement, regardless of whether a criminal conviction has been obtained. *Citimortgage* at ¶ 13-17.

{¶35} Conversion "is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim

inconsistent with his rights." *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990). Thus, there are three basic elements to a conversion claim: (1) a defendant's exercise of dominion or control, (2) over a plaintiff's property, (3) in a manner inconsistent with the plaintiff's rights of ownership. *RFC Capital Corp. v. EarthLink, Inc.*, 10th Dist. Franklin No. 03AP-735, 2004-Ohio-7046, ¶ 61. If a defendant comes into possession of property lawfully, a plaintiff must prove two additional elements: (1) that he or she demanded the return of the property after the defendant exercised dominion or control over the property, and (2) that the defendant refused to deliver the property to the plaintiff. *Id.*

{¶36} Campbell was Tyus's attorney of record for a period of time and performed work on her behalf. After Campbell was no longer Tyus's attorney, there was a settlement of the case, and he sought to obtain his fees and costs from the settlement funds. Marshall initially legally had possession of the funds, but despite a court order to turn a portion of them over for Campbell's compensation, refused to do so. On this record, Campbell demonstrated his theft/ embezzlement/conversion claims, and the trial court properly granted summary in his favor on them.

{¶37} In regard to Marshall's counterclaims against Campbell, she simply did not present any evidence that created a genuine issue of material fact as to any of them.

{¶38} In light of the above, the trial court erred by granting summary in favor of Campbell on his fraud claim; rather, it should have granted summary in favor of Marshall as to this claim. But the trial court properly granted summary judgment in favor of

Campbell on his theft/embezzlement/conversion claims. The trial court also properly granted summary in favor of Campbell on all of Marshall's counterclaims.

{¶39} The first and second assignments of error are overruled, except to the extent of the trial court's decision granting Campbell judgment on his fraud claim against Marshall; judgment should have been granted in Marshall's favor, thereby totally eliminating the claim from the case.

**Restitution Judgment**

{¶40} In her final assignment of error, Marshall challenges the trial court's award to Campbell of $50,443.70. One of Campbell's claims to relief stated in his complaint was based on any relief the court deemed he was entitled to "at law or in equity." As mentioned, during the *Tyus* proceedings, Campbell sought relief under the doctrine of quantum meruit. In *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 68 Ohio St.3d 570, 629 N.E.2d 431 (1994), the Ohio Supreme Court held the following:

> When an attorney representing a client pursuant to a contingent-fee agreement is discharged, the attorney's cause of action for a fee recovery on the basis of quantum meruit arises upon the successful occurrence of the contingency.
>
> A trial court called upon to determine the reasonable value of a discharged contingent-fee attorney's services in quantum meruit should consider the totality of the circumstances involved in the situation. The number of hours worked by the attorney before the discharge is only one factor to be considered. Additional relevant considerations include the recovery sought, the skill demanded, the results obtained, and the attorney-client agreement itself.

*Id.* at paragraphs two and three of the syllabus.

{¶41} The essential elements of recovery under quantum meruit are: (1) valuable services were rendered or materials furnished, (2) for the person sought to be charged, (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him or her, (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services was expecting to be paid by the person sought to be charged. *Sonkin & Melena Co., L.P.A. v. Zaransky*, 83 Ohio App.3d 169, 175, 614 N.E.2d 807 (8th Dist.1992).

{¶42} Any request for a quantum meruit recovery necessarily invokes the equitable jurisdiction of the court. *Id.* That being the case, the court's decision to award attorney fees on a quantum meruit basis is reviewable only for an abuse of discretion. *Goldauskas v. Elyria Foundry Co.*, 145 Ohio App.3d 490, 763 N.E.2d 645 (9th Dist.2001). An abuse of discretion is more than just an error of judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶43} Upon review, the trial court's decision to award Campbell $50,443.70 without allowing Marshall an opportunity to be heard and with scant evidence in the record as to Campbell's services vis-a-vis Marshall's services rendered in the *Tyus* case was an abuse of discretion. Not only was Marshall denied a hearing in this case, but our review of the proceedings in the *Tyus* case also demonstrates that she was not heard on this issue. We will not rely on Campbell's bare assertion that he was entitled to the amount rendered because he was an attorney experienced in nursing home neglect cases, and

Marshall was not, or that Marshall only handled the matter for approximately one month prior to it settling. As mentioned, the totality of the circumstances should be considered; the record before us does not demonstrate that the trial court judge, who was a different judge than in the *Tyus* proceedings, did that.

**{¶44}** Accordingly, Marshall's third assignment of error is sustained.

**Conclusion**

**{¶45}** The trial court properly granted summary judgment in favor of Campbell on his theft/embezzlement/conversion claims. The court's judgment in favor of Campbell on his fraud claim was in error; it should have been granted in favor of Marshall and, thus, it is totally eliminated from the case. The trial court properly granted summary in favor of Campbell on all of Marshall's counterclaims. The trial court abused its discretion in awarding Campbell $50,433.70 without conducting a hearing at which Marshall could be heard.

**{¶46}** Judgment affirmed in part and reversed in part; case remanded. Upon remand, the trial court shall conduct a hearing with the parties solely for determination of the amount of relief Campbell is entitled to under the doctrine of quantum meruit.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

_____

____

LARRY A. JONES, SR., PRESIDING JUDGE

MARY J. BOYLE, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR