[Cite as *Law Office of Craig T. Weintraub v. Bruner*, 2022-Ohio-1939.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

LAW OFFICE OF CRAIG T. WEINTRAUB,  :

     Plaintiff-Appellee,       :

                        v.              :

HARVEY B. BRUNER, ET AL.,     :

     Defendants-Appellants.   :

Nos. 110854 and 110859

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** June 9, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-923865

---

### *Appearances:*

The Law Office of Michael Pasternak and Michael B. Pasternak, *for appellee* Law Office of Craig T. Weintraub.

The Ondrejech Law Firm, LLC, and Mark S. Ondrejech, *for appellant* Harvey B. Bruner.

The Mizanin Law Firm and John D. Mizanin, Jr., *for appellant* Dominic Schender.

MICHELLE J. SHEEHAN, J.:

{¶ 1}  Defendants-appellants Harvey Bruner and Dominic Schender appeal the judgment of the trial court awarding plaintiff-appellee Law Office of Craig

Weintraub legal fees after a trial to the court. Craig Weintraub claimed legal fees though his law firm for his prior representation of Schender who later retained Bruner. Bruner settled the legal case for Schender. Because we find that the verdict for quantum meruit was based upon sufficient evidence, was not against the manifest weight of the evidence, and that the trial court did not abuse its discretion in determining the amount of the compensation, we affirm the judgment of the trial court.

## I. PROCEDURAL HISTORY AND FACTS OF THE CASE

{¶ 2} In 2015, Schender retained Weintraub to represent him after federal agents executed search warrants on his properties and seized over $2 million dollars in money and personal property. Schender paid Weintraub a $75,000 retainer and entered into a representation agreement. The federal government filed a civil forfeiture action, which eventually resolved in 2019. Prior to the resolution of the civil forfeiture case, Schender discharged Weintraub and retained Bruner with a retainer and a contingency agreement. Weintraub gave notice to Bruner that he had a claim on any fees collected. The civil forfeiture case eventually settled, and Bruner received and retained a total of $227,390.28 in fees. On October 24, 2019, Weintraub filed a lawsuit against Bruner and Schender, asserting several claims to recover attorney fees.

{¶ 3} On June 14, 2019, the case was tried to the court. Schender did not appear or testify at trial but was represented by counsel. The trial court heard testimony from Weintraub and Bruner and received exhibits that included three

representation agreements, two between Weintraub and Schender and one between Bruner and Schender that was amended.

{¶ 4} Weintraub testified that, at the beginning of his representation, he and Schender entered into a representation agreement and that, at that time, Schender paid a $75,000 retainer. Weintraub testified that he and Schender believed they entered into be a fee-based agreement, but he admitted that the representation agreement they entered also contained language from a flat-fee agreement. Weintraub testified that "[i]t's not the best written contract, and I certainly have some qualms with what I wrote here. It was poorly worded. But the intent of the parties was certainly that it was going to be billed at an hourly rate of $250 per hour."

{¶ 5} In regard to the work performed for Schender, Weintraub testified the scope of his representation encompassed the civil forfeiture case as well as working to keep the case from being indicted criminally. As to the hours Weintraub worked, he described his method of recording time; keeping track of the hours worked by notations on file jackets of the date and hours, but he said he did not contemporaneously detail the work performed. Weintraub testified that at the end of 2015 or early 2016, Schender requested an itemized billing, which he provided showing that the retainer was almost fully expended.

{¶ 6} By September 2018, Weintraub testified that Schender owed a balance of $71,500. Specifically, Weintraub testified that he spent 279 hours working on Schender's behalf in 2015, 127 hours in 2016, 136 hours in 2017, and 26 hours prior to September 11, 2018. He further testified that Schender had paid $75,000 and

that Schender owed a balance of $71,500. Weintraub and Schender discussed the balance due and agreed to enter into a contingency fee agreement. Weintraub stated Schender wanted to enter into a contingency fee agreement whereby Weintraub would only collect 15% of any proceeds recovered from the government by means of a settlement. Weintraub said this was done because Schender was not in a position to pay the fees and wanted "to incentivize [Weintraub] to make sure that [he] would get [Schender] full value of all the moneys that were outstanding." By entering the contingency agreement, Weintraub stated that he was giving up the money owed to date.

{¶ 7} The contingency agreement was executed on September 11, 2018. The federal government released some of the money seized, and Weintraub testified that he retained 15% of the money, $8,513.18 under the terms of the contingency agreement. By April 2019, the federal government decided it would not indict Schender, and on April 4, 2019, the stay in the civil forfeiture case was lifted. At that time, Weintraub was engaged in a six-week criminal trial and Schender was not happy with Weintraub's lack of communication.

{¶ 8} On May 28, 2019, Schender terminated his relationship with Weintraub. Bruner entered an appearance in the federal case on June 2, 2019. Bruner testified that he and Schender entered into a representation agreement whereby Schender agreed to pay Bruner $25,000 and Bruner would receive an additional contingency fee of 10% of money recovered from the federal government.

Weintraub testified that he became aware of Bruner's representation when he received notification from the federal court that Bruner filed a notice of appearance.

{¶ 9} On June 18, 2019, Weintraub notified Bruner of a charging lien for legal fees based on his representation of Schender. Bruner testified that he talked with Schender about Weintraub's claim for fees. On July 23, 2019, he and Schender modified the terms of their agreement, limiting the fee Bruner would collect in the event Weintraub obtained a lien on any property returned from the federal government because Schender was concerned about paying two fees in the case.

{¶ 10} After a settlement conference in the federal case and further negotiations by Bruner and the federal government, the parties agreed that the federal government would return approximately 90% of the seized money, pay $30,000 in interest, and return the seized personal property. The settlement agreement was approved by the trial court on August 7, 2019.

{¶ 11} On August 7, 2019, Weintraub and Bruner met to discuss Weintraub's claim for fees, but no agreement was reached. By September 5, 2019, the federal government released the seized funds to Bruner. Bruner disbursed the funds to Schender on September 11, 2019, and retained the 10% contingency fee due under his agreement with Schender. In total, Bruner received $227,390.28 in fees. On September 13, 2019, Weintraub filed motions in the federal case asserting his lien on the settlement, but those motions were denied as moot because the federal government had already returned the funds to Bruner.

{¶ 12} In his testimony, Bruner stated that he entered an appearance in Schender's case, received discovery, and negotiated the settlement that was reached after having numerous visits to the U.S. attorney's office and one in person status conference. Bruner testified that he and Weintraub met in August 2019, but no agreement was reached. He testified that Weintraub's demands would necessitate an increase in the contingency fee, which he knew Schender would not agree to. Bruner's testimony acknowledged that Weintraub informed him of a claim for fees, but because he and Weintraub did not reach an agreement regarding the attorney fees and Weintraub did not initiate a lawsuit before the federal government returned the funds to Schender, Bruner did not escrow any of the fees. As to the total amount of the work performed by Bruner, Weintraub testified that when he met with Bruner in August 2019, Bruner indicated he had worked approximately 30 hours on the case. Bruner disputed Weintraub's testimony.

{¶ 13} On August 30, 2021, the trial court entered a verdict in favor of Weintraub based on his quantum meruit claim only. In its judgment entry announcing its verdict and award, the trial court determined that

> [n]otwithstanding the language of the initial fee agreement (limiting the amount to $75,000), his less than stellar method of time keeping, his failure to take action prior to the distribution, and his unfortunate failure to communicate with his client, in the interest of justice and fairness Mr. Weintraub is entitled to compensation for his efforts on behalf of Mr. Schender. Not the full amount claimed but 50% of the $130,350.20, which is $65, 175.10.

> Accordingly, the Court finds in favor of the Plaintiff on his claim in quantum meruit in the amount of $65,175.10 and against Plaintiff on all other claims.

{¶ 14} Both Bruner and Schender appealed the verdict and award of compensation. We consolidated their appeals.

II. LAW AND ARGUMENT

A. SUMMARY

{¶ 15} Bruner and Schender raise identical assignments of error, which read:

1. The trial court erred against the manifest weight and sufficiency of the evidence and committed abuse of discretion in granting judgment to appellee Weintraub in the amount of $65,175.10 on his quantum meruit claim because the evidence showed that Weintraub had already been paid in full for the services he had rendered to Schender prior to his discharge and it is inequitable to find that he was entitled to be paid additional fees under the purported September 11, 2018 contingency fee contract under the circumstances of this case.

2. The trial court erred against the manifest weight and sufficiency of the evidence and abused its discretion in awarding attorney fees to Weintraub because Weintraub failed to prove the amount of reasonable attorney fees he was due.

3. The trial court abused its discretion in its judgment entry by not making clear against whom the judgment was entered. The judgment entry is ambiguous about whether the judgment is against appellant Bruner only or joint and several against Bruner and Schender.

{¶ 16} Bruner and Schender argue that because the first representation agreement between Schender and Weintraub was a flat-fee arrangement that was paid in full, the contingency fee agreement Weintraub and Schender later executed was not valid. They argue that without a valid contingency contract, Weintraub had no ability to claim fees because he was paid in full for his services under the first representation agreement. The appellants provide two theories to support their argument: 1) the contingency contract was not supported by consideration, and 2)

the contingency contract was obtained through fraud, coercion, or overreaching by Weintraub.

{¶ 17} Alternatively, Bruner argues that even if Weintraub had a valid quantum meruit claim, the evidence provided of the work Weintraub performed was insufficient and against the manifest weight of the evidence. Finally, Bruner argues Weintraub cannot recover under the equitable remedy of quantum meruit because the clean-hands doctrine precludes any award of compensation.

{¶ 18} Beyond the merits of the verdict and the compensation awarded, Bruner and Schender argue that the trial court erred in the judgment entry announcing the verdict where the judgment is not clear as to who the monetary award is against.

## B. APPLICABLE LAW AND STANDARDS OF REVIEW

{¶ 19} An appellate court reviews claims that a civil verdict is based on insufficient evidence or is against the manifest weight of the evidence using the standards applicable to criminal cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 7. The Ohio Supreme Court defined sufficiency as "'a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997)*,* quoting *Black's Law Dictionary* 1433 (6th Ed.1990). Although a verdict may be sustained by sufficient evidence; an appellate court may conclude that the judgment is against the manifest weight of the evidence.

> Weight of the evidence concerns "the inclination of *the greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*."

(Emphasis sic.) *Eastley* at ¶ 12, quoting *Thompkins* at 387.

{¶ 20}When reviewing the manifest weight of the evidence, the reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, [the trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 21} In reviewing a verdict as being against the manifest weight of the evidence however, the court is "guided by a presumption that the findings of the trier-of-fact were indeed correct." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *Eastley* at ¶ 21. In this regard, when faced with evidence "'"susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."'" *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc.* at 80, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

{¶ 22} In this case, the trial court rejected all but Weintraub's quantum meruit claim. Where an attorney representing a client on a contingency fee basis is discharged, upon the client's settlement and recovery, the discharged attorney "is entitled to recover the reasonable value of services rendered the client prior to discharge on the basis of quantum meruit." *Fox & Assocs. Co., L.P.A. v. Purdon*, 44 Ohio St.3d 69, 69, 541 N.E.2d 448 (1989). In *Dickson & Campbell, L.L.C. v. Marshall*, 8th Dist. Cuyahoga No. 104133, 2017-Ohio-1032, ¶ 41, we stated the essential elements for recovery on a claim for quantum meruit as being

> (1) [v]aluable services were rendered or materials furnished, (2) for the person sought to be charged, (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him [or her], (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services was expecting to be paid by the person sought to be charged.

*Id.*, quoting *Sonkin & Melena Co., L.P.A. v. Zaransky*, 83 Ohio App.3d 169, 175, 614 N.E.2d 807 (8th Dist.1992), quoting *Montes v. Naismith & Tevino Constr. Co.*, 459 S.W.2d 691, 694 (Tex.Civ.App. 1970).

{¶ 23} "In light of the fact-specific nature of the inquiry and the equitable balancing involved, a court's decision to award attorney fees on a quantum meruit basis is reviewable only for an abuse of discretion." *Dickson & Campbell L.L.C. v. Marshall,* 8th Dist. Cuyahoga No. 106289, 2018-Ohio-2233, ¶ 10. "[T]he term 'abuse of discretion' implies that the court's attitude was unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). "A decision is unreasonable if there is no sound reasoning process that

would support that decision." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

> C.  THE VERDICT AND AWARD OF COMPENSATION WERE BASED ON SUFFICIENT EVIDENCE AND WERE NOT AN ABUSE OF DISCRETION OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE
>
> 1.  There was sufficient evidence regarding the representation agreements between Weintraub and Schender to find that the contingency fee agreement was valid and the verdict was not against the manifest weight of the evidence

{¶ 24}In the first assignment of error, Bruner and Schender argue that the verdict fails because 1) it was based upon insufficient evidence, and 2) was against the manifest weight of the evidence.  Underlying their argument that the evidence was insufficient is a legal argument that Weintraub's initial agreement with Schender was fully satisfied and therefore the latter contingency fee agreement was invalid because it was without consideration and/or was obtained by fraud on Weintraub's part.

{¶ 25}The trial court found in favor of Weintraub only on his quantum meruit claim.  In order to award the reasonable value of a discharged contingent-fee attorney's services in quantum meruit, the trial court would have had to determine the contingency fee agreement between Weintraub and Schender was valid. "The paramount objective in construing any written instrument is to ascertain the parties' intent.  Contracts should generally be construed so as to give effect to that intention." *Parkbrook Dev. Corp. v. N. Reflections*, 8th Dist. Cuyahoga No. 66712, 1995 Ohio App. LEXIS 1715, at 8-9 (Apr. 27, 1995), citing *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio

St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. Where the terms of a contract are contradictory or ambiguous, the court may hear parol evidence to determine the intent of the parties. *Id.*

{¶ 26} The representation agreements between Weintraub and Schender were admitted at trial. Our review of the first representation agreement provides that the agreement contains contradictory terms. The overall form of the agreement is a retainer agreement, with a clause referencing an hourly rate and terms regarding return of unearned portions of the retainer. In contrast, the agreement contains language that the agreement comprises a flat-fee arrangement fixing the fee Weintraub would receive.

{¶ 27} Because the terms of the first agreement are contradictory, the trial court was free to receive and consider parol evidence regarding Weintraub's and Schender's intent in entering the first representation agreement. To that extent, the trial court heard testimony from Weintraub that he and Schender intended to enter into a retainer agreement at the onset of his representation. Weintraub testified to the legal work he completed representing Schender and the discussion he had with Schender regarding fees due that prompted Schender to propose Weintraub continue representing him on a contingency fee basis. That testimony confirms that the parties intended for Weintraub to represent Schender on an hourly basis.

{¶ 28} Where there was evidence that Weintraub and Schender agreed to a retainer agreement, the trial court could, and did, find that "[i]nitially, Mr. Weintraub was retained in 2015 with a retainer of $75,000 and an hourly rate of

$250.00 per hour." The trial court also found that "Mr. Weintraub and Mr. Schender entered into a new agreement voiding the old agreement and replacing it with a 15% contingency agreement." Further, the trial court heard evidence of the parties' intent and found that the contingency agreement was entered "because Schender could not afford the hourly rate."

{¶ 29} In its findings, the trial court recognized the discrepancy in the initial contract, noting that "[w]hile the initial agreement capped legal fees at $75,000.00, the Court finds that both parties recognized the need for a new agreement." Accordingly, the trial court heard evidence regarding the intent of the parties and concluded that the parties thus had a need for a new agreement because of the additional outstanding legal fees and that finding is consistent with a finding that there was consideration for the contingency agreement. Additionally, Weintraub testified to the type of work he performed for Schender and the hours expended in doing so. As such, there was evidence that Weintraub rendered legal services to Schender and Schender understood that he would be charged for those services. *Dickson & Campbell*, 2017-Ohio-1032, at ¶ 41. There was sufficient evidence presented at trial on the elements of quantum meruit to sustain the verdict.

{¶ 30} As for appellants' claims of fraud or overreaching and that Weintraub improperly induced Schender to enter the contingency contract, there was no evidence to contradict Weintraub's testimony regarding his and Schender's intent and actions under both representation agreements. Appellants' arguments are inferences grounded on the disregard or disbelief of Weintraub's testimony. Thus,

they are, at best, speculative arguments as they are not based on the evidence at trial, but the disbelief of the evidence at trial. With only Weintraub's explanation of the circumstances of his representation and agreements with Schender, the verdict was consistent with the evidence presented at trial and we cannot say that the trial court's verdict was against the manifest weight of the evidence. *Eastley*, 2012-Ohio-2179, at ¶ 21.

> 2. There was sufficient evidence presented of Weintraub's work to support an award in equity, the award was not against the manifest weight of the evidence, and the trial court did not abuse its discretion in determining the amount of the compensation awarded

{¶ 31} Under the second assignment of error, appellants complain that the trial court erred in awarding compensation where the evidence submitted as to Weintraub's work was insufficient and against the manifest weight of the evidence. They argue in the alternative that if the evidence was sufficient and found not to be against the manifest weight, Weintraub was not entitled to receive any award in equity under the doctrine of clean hands.

{¶ 32} Weintraub testified as to the hours he worked, the work he performed, and described his method of recording that work. He admitted that he did not keep detailed, contemporaneous records of the work he performed. The trial court heard this testimony and noted in its verdict that the method Weintraub used to track his work was "less than stellar." Appellants argue this record keeping was not sufficient to detail the work performed and that the work testified to was not necessary because the federal forfeiture case was stayed. However, the trial court was free to

evaluate Weintraub's testimony as to the work performed on the case and believe some, all, or none of the testimony regarding the efforts Weintraub expended. *State v. Mitchell*, 8th Dist. Cuyahoga No. 93273, 2010-Ohio-2890, ¶ 27 ("The trial court was free to believe all, some, or none of her testimony, and indeed was in the best position to do so.").

{¶ 33} To the extent that appellants complain Weintraub's testimony regarding the hours expended were unnecessary or inflated, the trial court, having found in favor of Weintraub on quantum meruit, was in the best position to determine the amount to be awarded in equity and was not bound to precisely calculate an award on an hourly basis. The Ohio Supreme Court held that

> [a] trial court called upon to determine the reasonable value of a discharged contingent-fee attorney's services in quantum meruit should consider the totality of the circumstances involved in the situation. The number of hours worked by the attorney before the discharge is only one factor to be considered. Additional relevant considerations include the recovery sought, the skill demanded, the results obtained, and the attorney-client agreement itself.

*Reid v. Lansberry*, 68 Ohio St.3d 570, 570, 629 N.E.2d 431 (1994), paragraph three of the syllabus; *Charles Gruenspan Co. v. Thompson*, 8th Dist. Cuyahoga No. 80748, 2003-Ohio-3641, ¶ 64.

{¶ 34} In its verdict, the trial court detailed the facts and circumstances of the representation and reflects that the trial court considered the totality of the circumstances of Weintraub's representation of Schender. Further, the trial court stated that it awarded compensation on an equitable basis, finding the award to be "in the interest of justice and fairness." We cannot say that the verdict as based on

insufficient evidence, that the award was against the manifest weight of the evidence, or the trial court abused its discretion in determining the amount of the compensation.

{¶ 35} Appellants also argue that no award could be made in this case based on the clean-hands doctrine. This doctrine may act to preclude recovery on an equitable claim to a plaintiff who "has violated good faith by his prior-related conduct, the court will deny the remedy." *Marinaro v. Major Indoor Soccer League*, 81 Ohio App.3d 42, 45, 610 N.E.2d 450 (9th Dist.1991), citing *Bean v. Bean*, 14 Ohio App.3d 358, 363-364, 471 N.E.2d 785 (12th Dist.1983). This doctrine requires "only that the plaintiff must not be guilty of reprehensible conduct with respect to the subject matter of his suit." *Id.*, citing *Kinner v. Lake Shore & Michigan S. Ry. Co.*, 69 Ohio St. 339, 69 N.E. 614 (1904), paragraph one of the syllabus; *Goldberger v. Bexley Properties*, 5 Ohio St.3d 82, 85, 448 N.E.2d 1380 (1983); *Hempy v. Green*, 10 Dist. Franklin No. 89 AP-1369, 1990 Ohio App. LEXIS 2223 (May 31, 1990).

{¶ 36} Appellant's argument to preclude an award relies on a theory that Weintraub fraudulently induced, coerced, or overreached in having Schender enter into a contingency fee agreement. As we find those arguments to be speculative at best on the evidence presented at trial, we do not find this is a case where there was "reprehensible conduct" that would serve to preclude Weintraub from prosecuting his quantum meruit claim.

{¶ 37} Because there was evidence presented as to the extent and the nature and amount of Weintraub's representation of Schender and the trial court considered all the circumstances of that representation in fashioning its award of compensation, we cannot say that award was based on insufficient evidence or that it was against the manifest weight of the evidence.

{¶ 38} The first and second assignments of error are overruled.

D. THE JUDGMENT ENTRY

{¶ 39} Bruner and Schender argue within the third assignment of error that the trial court's judgment is ambiguous and in error where it can be read to be an award in favor of Weintraub and against Bruner, Schender, or both. In its judgment entry announcing its verdict and award, the trial court states that "[t]he plaintiff claims he is entitled to legal fees from the Defendant, Henry [sic] Bruner." The trial court, without identifying Schender as a defendant in the case, concludes the judgment entry by finding "in favor of the Plaintiff on his claim in quantum meruit in the amount of $65,175.10 and against Plaintiff on all other claims." Although the judgment entry does not explicitly state that the award was entered against Bruner only and not Schender, Weintraub abandoned any claim against Schender at trial. Further, Weintraub acknowledged to this court at oral argument that the award of in this case should be read to be an award in his favor against only Bruner.

{¶ 40} As the judgment entry announcing the verdict and awarding compensation is not explicit in stating that the award was in favor of Weintraub

against Bruner solely, we remand this matter to the trial court to correct the judgment entry to so explicitly state.

{¶ 41} The third assignment of error is sustained.

III. CONCLUSION

{¶ 42} We find that the evidence presented at trial was sufficient to support Weintraub's claim under quantum meruit, that the trial court based its verdict upon sufficient evidence, and that such verdict was not against the manifest weight of the evidence. Further, the trial court did not abuse its discretion in determining the amount of compensation awarded to Weintraub. As such, we overrule Bruner's first and second assignment of errors. As to the journal entry awarding compensation, we remand this matter for the trial court to clarify in its judgment entry that the verdict is against Bruner solely.

{¶ 43} Judgment affirmed, and case remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

ANITA LASTER MAYS, P.J.; and
LISA B. FORBES, J., CONCUR